Hall, Judge.
 

 The principal question in this case is, whether the sheriff is chargeable with an escape for having given up to
 
 Ryan
 
 the keys of the jail in which he had lodged him, whereby it was optional with
 
 Ryan
 
 cither to remain in jail or not.
 

 It is said in 3
 
 Co.
 
 44, that every person in jail, by process of law, is to be kept in
 
 salva et arcta custodia,
 
 in order to compel him the more speedily to pay his debts
 
 *215
 
 and make satisfaction to his creditors. And it is stated in the same case, that by stat. of
 
 West.
 
 2.
 
 ch.
 
 11. the she-
 
 v
 
 riff may keep them who are in execution in fetters and Leons, to the end that they may satisfy their creditors, Lord Coke says, that, if need require it, prisoners may be kept in irons by that statute; but that could not be done by the common law; that imprisonment is intended for safe custody, but not for punishment. ([Bac.
 
 Mr. Escape, B. Co. Lit.
 
 260
 
 a.)
 
 It is also laid down in
 
 Plow den 37,
 
 that if a woman be jailor, and one imprisoned in the jail marry her, it is an escape in the woman, for the law adjudges the prisoner to be at large; for he cannot be imprisoned but under a keeper, and he cannot be under the custody of his wife: that if the warden of the fleet, who hath his office in fee, die seized, his son and. heir being then imprisoned there, and the office descend to him, being in prison, the law will adjudge him to be out of prison, although he has fetters upon him; because he cannot be his own prisoner. So that no man can be lawfully detained in jail without a jailor or keeper.
 

 In
 
 Bartlett
 
 v.
 
 Wilkes and others,
 
 (3
 
 Mass. Rep.
 
 101-2.)
 
 Parsons,’
 
 C. J. says, that to allow a prisoner greater liberty than the law permits, is an escape. The escape is committed by being out of the legal custody of the sheriff; that if the debtor has a liberty inconsistent with that custody, he cannot be said to remain in legal custody. In
 
 Coleby
 
 v.
 
 Sampson,
 
 (3
 
 Mass. Rep.
 
 310.) the coroner arrested one Minot, the deputy jailor, for debt; neither the sheriff, or any other keeper of the jail authorized by him, was there to receive him; the coroner left his prisoner there with a copy of the precept: it was adjudged an escape in the sheriff, because he was not there to receive Minot; for Minot> though deputy jailor, could not receive himself; for the prisoner, by being a keeper, and having the keys, is no longer restrained of his liberty: that if a' sheriff make a prisoner of the jail keeper and give him the keys, it is an escape of the sheriff.
 

 
 *216
 
 In 6
 
 Johnson’s Rep.'
 
 22, it is decided that if a ca.
 
 sa.
 
 on a judgment against a sheriff was delivered to the coroner, who arrested the sheriff and delivered him in jail to the cus£0(jy of the under sheriff and jailor, and the sheriff immediately after went at large, the coroner was liable for an escape, because the sheriff was committed to the jail of which, by law, he had the custody, and of which he appoints the keeper.
 

 From these cases it appears clear to my mind, that custody implies physical force sufficient to restrain the prisoner from going at large; that when that physical force is removed, it is, in the eye of the law, an escape. No moral obligation can be received as a substitute for it. Although promises may be made, and may be observed, to remain in close jail, the moment compulsion and force are withdrawn, there is no legal custody; the prisoner becomes a free agent; there is no longer any imprisonment, and the precept to the sheriff is disobeyed. This is the result of the view I have taken of the case. The other point made, it is unnecessary to consider. I think the rule for a new tidal should be discharged.
 

 Henderson, Judge.
 

 The counsel for the defendant endeavors to distinguish this case from those cited. Where the keeper, a female, married her prisoner, and where the office of keeper devolved on a prisoner who was and remained in fetters; where the coroner delivered the sheriff whom he had arrested, to the sheriff’s deputy, the jailor, it was deemed an escape in the coroner: because in all these cases there was no keeper, for a priSoner cannot be his own keeper. In the present case, he says that the sheriff remained still the keeper, although he gave to the prisoner the keys of the jail; and there being in fact no departure out of the walls of the prison, there was, in law, no escape, and that physical restraint is not necessary; that moral restrain^ or what is the same thing, I think,, voluntary restraint, is sufficient;
 
 *217
 
 and he assimilates this case to one where there is no jail provided by law, or before any jail was pointed out by law as a place of confinement, when the sheriff himself was bound to find a jail, and such jail was weak and insufficient to retain the prisoner; yet the prisoner remained within the walls of the prison, it was deemed not an escape, and lie said that the only test of confinement was the remaining within the walls of the prison. I think-, if this argument is pushed to the proper extent, it Avill show the incorrectness of the conclusion. There can be no confinement Avithout a keeper, and a prisoner cannot be his oavu keepers therefore., if his imprisonment is voluntary, if he is considered as being in confinement it is under his OAvn keeping-, and such confinement is not imprisonment. The cases of the prisoner marrying his keeper, and the office of keeper descending on a person who Avas and continued in prison and in fetters, sIioavs that confinement alone will not do. It must be involuntary confinement, and that under a keeper; for the necessity of there being a keeper, shoAvs that confinement from a person’s own Avill is not sufficient. Nor is it material whether this confinement arises from a prospect of benefit, a sense of duty arising from a disposition to submit to the laAAf, or from a promise made to the keeper, or from any other cause than that of physical force. It is true, if the prison is broke open and a prisoner remains in the jail through choice, the sheriff cannot be charged with the escape, for the opening has not been by his consent; he has not abandoned the prisoner to his own will. Nor is this like the case to which it has been compared, Avhere the jail was weak and might haAre been broke from by the prisoner; it was closed and Avas effectual to the end designed, and an allegation that it was insufficient will not bo heard; it is like a legal presumption Avhich cannot be contradicted. How unlike thu case: here is no attempt at confinement or restraint; the remaining in the jail was purely voluntary; the keys were deli
 
 *218
 
 vered to the prisoner, and he opened and shut the door at.. his own pleasure. As Chief Justice
 
 Parsons
 
 says, free-agency is inconsistent with imprisonment. It is designed ma]ie dishonest men pay their debts; men who are able, but not willing to do so. Take away the idea of restraint, and you take with it half its bitterness.